# Dickerson v. Finley.

## Breach of Contract.

(Decided Nov. 26, 1908. Rehearing denied Feb. 5, 1909. 48 South. 548.)

1. *Damages; Contracts; Breach.*—In an action for the breach of a contract, the damtges recoverable are such as may be fairly said to arise in the usual course of things from a breach of the contract itself, and also such as may be reasonably supposed to have been in the contemplation of both parties, as the probable result of the breach, when they made the contract.

2. *Same; Remote Damages; Profits.*—Profits, not the immediate fruits of the principal contract, but dependent on collateral engagement, and enterprises not brought to the notice of contracting parties, are too remote to constitute damages in an action for breach of contract.

3. *Same; Certainty; Uncertain Profits.*—Profits which are purely speculative in their nature and dependent on many incalculable contingencies as to render it impracticable to determine by any trustworthy mode of computation, are considered uncertain.

4. *Same; Duty of Party to Minimize.*—In rebuttal of plaintiff's evidence, as to damages sustained by reason of the breach of the contract, evidence that plaintiff could have minimized the damages after ascertaining that defendant was not going to fulfill the contract, is admissible.

5. *Contracts; Breach; Damage.*—In order to charge a party breaching a contract with damages arising from special circumstances that impart to the subject of the contract a value and importance not indicated by its appearance, the party so sought to be charged must have had notice of such special circumstances when he entered into the contract.

6. *Appeal and Error; Harmless Error; Ruling on Pleading.*—Where nothing material is alleged in the count, other than that alleged in the objectionable part of the count, it is not prejudicial to the party pleading, to sustain a demurrer to the count, although the proper way to reach such claim is by motion to strike.

7. *Same.*—Where the gravamen of the entire count was that one of the breaches of the contract was that the defendant refused to allow his teams to be used at all, the plaintiff was not prejudiced by striking from his complaint the allegation that defendant refused to furnish sufficient feed to keep the team, as it was too indefinite to raise a material issue, and no injury was alleged to have resulted by defendant's failure in this respect.

8. *Pleading; Matters of Evidence; Itemizing Damages.*—It is not necessary that a complaint in an action for damages for a breach of contract should itemize each matter of expense claimed as damages; this is a matter of evidence and not of allegation.

APPEAL from Limestone Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by George W. Dickerson against John G. Finley for breach of contract. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Count 3; "Plaintiff claims of defendant the sum of $10,000 as damages, for this: That, whereas, on, to-wit, the 27th of May, 1906, defendant, under and by the name of J. G. Finley, entered into a contract with plaintiff in words and figures as follows: 'State of Alabama, County of Limestone. This agreement, entered into by and between J. G. Finley, of Decatur, Ala., and George W. Dickerson, of Florence, Ala., witnesseth: That the said Finley, being the owner of the island in the Tennessee river below Decatur, Ala., known as "Finley's Island," and the owner of the standing timber thereon, and of a sawmill now on said island run by steam, and also the owner of cattle, mules, and horses, teams thereon, herewith agrees to furnish to said Dickerson all his standing timber, and free use of his sawmill, and the

[Dickerson v. Finley.]

free use of two yoke of oxen, together with log wagons, and all other tools necessary for logging of said timber; also the free use of two mule teams, together with log wagon and tools. The said Finley agrees to furnish the necessary oil for mill, and to keep mill in repair, and feed for cattle and mules. In consideration of the above, said Dickerson agrees to cut the timber, furnish the drivers for the teams, all labor in the sawmill, and the stacking of all merchantable lumber sawed at said mill, free of all expense to said Finley. Said Dickerson also agrees to manufacture all lumber in a workmanlike manner. No logs to be hauled or sawed that will not make merchantable lumber. Any logs cut that said Dickerson does not consider merchantable are to remain the property of said Finley and Dickerson in equal shares. Said Dickerson further agrees to purchase said Finley's half lumber, and pay for same, net cash, at the rate of $9 per 1,000 feet, payments to be made to said Finley when lumber is loaded on barge. Said Dickerson agrees to use proper care in handling said Finley's property. Said Dickerson agrees to pay and does pay $250 upon the signing of this contract. This money is to be applied on lumber bought of said Finley as provided in this contract. Said Dickerson agrees to run said sawmill and cut at the rate of 40,000 feet a month or more, barring accidents. Said Finley agrees to give said Dickerson to January 1, 1908, in which to complete this contract. This same is not to include bank timber, and not to interfere with land that is cut over. (Signed) J. G. Finley.' And plaintiff avers that at the time of making said contract defendant knew that plaintiff was making said contract for the purpose of manufacturing said timber into lumber and selling same at a profit. That plaintiff, with full knowledge on the part of said defendant, and relying upon the aforesaid contract, of

which said defendant was fully informed, did contract and agree to sell all of the merchantable lumber manufactured from said timber cut by him, the said plaintiff, on said island, at and for a profit of, to wit, $5.50 per 1,000 feet. That said plaintiff, in accordance with the terms of said contract above set forth, entered upon the performance of said contract, and did perform a part thereof. That the defendant, notwithstanding the performance and discharge by this plaintiff of all the conditions required by said contract to be performed by him, breached said contract on his part, in this: (1) He proceeded to cut from off said island a large amount of standing timber which could have been made into merchantable lumber, and none of which timber thus cut was bank timber, to wit, 40,000 feet, and upon this plaintiff objecting thereto the defendant asserted that he (defendant) intended to continue such cutting. (2) He refused to furnish to plaintiff the teams as provided under and by the terms of said contract. (3) He refused to permit the teams of mules contracted to be furnished by him to do all such work as was required to be done in the usual method of logging. (4) He refused to furnish sufficient feed to keep the teams furnished by him under said contract in such physical condition as that the same were able to do the work necessary to carry out said terms of the contract above set forth. (5) He constantly interfered with the hands employed by this plaintiff, who did the work required under said contract, and hindered them from doing all their work essential to the carrying out of the said contract. (6) He so interfered with the sawyer of plaintiff that said sawyer refused to proceed further with the work and left the island and plaintiff's employment. (7) He so interfered with the driver employed by plaintiff that he caused him to leave the service of plaintiff. The

plaintiff avers that he offered to hire or purchase other teams with which to do the work required under said contract, if the said defendant would pay the hire of same, and that said defendant refused to permit this plaintiff to hire or purchase said other teams, and refused to pay a reasonable hire therefor. Plaintiff further avers that said defendant, although plaintiff was always, from the time of the making of said contract until such refusal and wrongful discharge by the defendant, as hereinbefore set forth, and thence hitherto, ready and willing to execute, perform and fulfill the said contract in all things on his part to be performed and fulfilled, whereof the said defendant had been often told; and though said defendant, in pursuance and part performance on his part has furnished some of the teams mentioned in said contract, and has accepted and retained the sum of $250 paid to him by defendant in accordance with the terms of said contract, nevertheless this defendant afterwards, as set forth above, wrongfully prevented, and discharged by such prevention, and injuriously and wrongfully hindered, this plaintiff from the further execution and performance of said contract on his (plaintiff's) part, whereby plaintiff has lost all the prpofits by said transaction of sale of merchantable lumber to have been manufactured out of said timber, said lumber amounting to, to wit, 2,000,000 feet, all to his damage in the said sum."

Count 4 is similar to the first down through the contract, with the added allegations that there was omitted from the draft of said contract an agreement that defendant was to permit plaintiff to have the use of houses on the island for his hands and employes, and that shortly after the signing of the contract plaintiff called defendant's attention to this omission, and it was agreed between them that the same should constitute a part of

said contract. Then follows the allegation as to plaintiff's sale of lumber, etc., as in count 3. The allegations of breach are as follows: "(1) He caused plaintiff's hands to stop working for him, to wit, his driver and sawyer. (2) He refused to permit plaintiff to use all of said houses for his hands. (3) He notified plaintiff that he must move his hands out of the only house he permitted plaintiff to use as agreed on. (4) He cut of said standing timber, from which merchantable lumber could be cut, and none of which was bank timber, mentioned in the aforesaid contract, from, to wit, 30,000 to 40, 000 feet, and informed plaintiff he was going to continue to cut lumber on said island. (5) He refused to furnish plaintiff the teams as provided under and by the terms of said contract. (6) He refused to permit the teams of mules contracted to be furnished by him to do such work as is required to be done in the usual method of logging. (7) He refused to furnish sufficient feed to keep the teams furnished by him under said contract in such physical condition as that the same was able to do the work necessary to carry out the terms of the contract. (8) He constantly interferred with the hands employed by plaintiff to do the work required under said contract, and hindered them from doing the work essential to carry out the said contract." Then follows the allegation that the defendant thus prevented and hindered the plaintiff in the due performance of his part of the contract, and by so doing discharged plaintiff from further performance. Then follows the averment that defendant knew that plaintiff was making the contract for the purpose of manufacturing the timber into lumber and selling same at a profit, etc, as in 3.

Count 5: Same as 4 down to and including the contract with the following allegation: "That plaintiff, with full knowledge of defendant, went to large expense

in providing drives for teams for laborers in the saw-mill and for the stacking of the merchantable lumber, to carry out plaintiff's part of the contract, and, with full knowledge of said defendant, plaintiff, by and through the acts of defendant as hereinafter set forth, was compelled to keep at large expense hands and labor-ers, who were forced to remain idle by and through the acts of said defendant. That this plaintiff, by and through the acts of defendant as hereinafter set forth, was caused to use much of his own time and labor in attempting to carry out his part of the con-tract, which time and labor was very valuable. That plaintiff, in accordance with the terms of said contract above set forth, entered upon the performance of said contract. That defendant, notwithstanding the perform-ance and discharge by plaintiff of all the conditions re-quired by said contract to be performed by him, breached his said contract on his part in this: (Here follows the breach as set out under count 4 down to and including the fifth breach, with the added breach that he interfered with and hindered and prevented plaintiff from carrying out and executing his contract in full.) Plaintiff avers that said defendant, although this plaintiff was always, from the time of making the said contract until such re-fusal to, prevention, hinderance, and wrongful discharge by defendant as hereinbefore set forth, and thence hitherto, ready and willing to execute, perform, and fulfill the said contract in all things on his part to be performed, whereof the defendant had often been told, and although said defendant, in pursuance of and part performance of said contract, had furnished some of the teams mentioned in said contract, and has accepted and retained the sum of $250, which this plaintiff paid him under and by the terms of said contract, nevertheless the said defendant afterwards, as above set forth, wrong-

[Dickerson v. Finley.]

fully prevented, and discharged by such prevention, and injuriously and wrongfully hindered, this plaintiff from the further execution and performance of said contract on his part, whereby plaintiff has been put to large costs and expenses in providing hands and maintaining them in readiness, and in maintaining himself in readiness for the complete execution of said contract, and has lost much valuable time of himself, and has lost the value of his own service, all to his damage," etc.

Count 6: Same as 3 down to and including the contract. Same allegation as in count 4 with reference to the furnishing of houses, etc. Same allegation of breach as in count 4. Same allegation of readiness and willingness to perform on part of plaintiff, and the prevention and hinderance on part of defendant, together with the acceptance and retention of money paid under the contract as in count 5, and the same allegation as to loss of time and service, etc., as in count 5.

W. R. WALKER, for appellant. When a refusal of one party to a contract to perform his part thereof is a waiver of the conditions precedent otherwise required of the other party.—2 Keener's Selections on Contr. 925; *Elliott v. Howison,* 146 Ala. 568; *Short v. Stone,* 82 B. Rep. 358; *Cort v. Ambergate, etc., Ry. Co.,* 17 Q. B. 127; 2 Keener's Cas. Contr. 1272, 1281; 1 Langd. & W. Cas Contr. (2 Ed.) 937, 946; *Hieronymous Bros. v. Bienville Water Supply Co.,* 131 Ala. 447; 138 Ala. 577; *Drake v. Groce,* 22 Ala. 409; *U. S. v. Behan,* 110 U. S. 338; *Fails v. McRee,* 36 Ala. 64, 67; *Bonham's Case,* 65 Ala. 456, 459; *Mason v. Ala. Iron Co.,* 73 Ala. 270; *Lake S. & M. S. Ry. Co., v. Richards,* 30 L. Ed. A. 33, note; *Cook v. Cook,* 110 Ala. 567; *Roehm v. Horst,* 178 U. S. 1; *Marks v. Van Elghen,* 33 C. C. A. 208; *Ridley v. Smith,* 64 N. Y. 576. When one party to a contract,

who has conditions precedent to perform, fails to perform them, such failure is a breach of contract for which an action will at once lie by the other party to said contract.—*Nesbitt v. McGehee,* 26 Ala. 748; 3 Page Contract, § 1444; *Leek Milling Co. v. Longford,* (Miss.) 33 Sou. 492; *Howard v. Am. Mfg. Co.,* 56 N. E. Rep. N. Y. 986; Bishop Contract, (2 Ed.) § 827; *Powell v. Summons,* 31 Ala. 552; *Gallagher v. Nichols,* 60 N. Y. 246.

Where one party by his acts prevents the performance of such contract by the other party there is a breach of the contract, for which an action will at once lie.— *Stewart v. Keteltas,* 36 N. Y. 388; *Gallagher v. Nichols,* 60 N. Y. 438; *Pordage v. Cole,* 1 Saunders, (Ed. 1846) 319; 1 L. & W. Cas. Contr. 625; 2 Keener's Sel. Cas. Contr. 1074; *Nov. Co. v. Wilcox,* 7 Jones L. (N. C.) 481; *Jones v. Walker,* 13 B. Monroe, 163; *Camp v. Barker,* 21 Vt. 469; *Ruble v. Massey,* 2 Md. 636; *Bright v. Taylor,* 4 Sneed, 159; *Jones v. R. R. Co.,* 14 W. Vo. 514; 1 Am. & Eng. Encycl. Law (1 Ed.) 921-2; 3 Page on Contract, §§ 1444-5; *Christapher etc., Co. v. Yeager,* 67 N. E. Rep. 166; *Shirk v. Lingeman,* 59 N. E. Rep. 941; *Howard v. Am. Mfg. Co.,* 56 N. E. Rep. 986; *Dege v. Hammond,* 25 L. R. A. 719; *Lehiman v. Webster,* 70 N. E. Rep. 600; *District og Columbia v. Camden Iron works,* 181 U. S. 453; 45 L. Ed. 948; *Chicago etc. Ry. Co., v. Hoyt,* 149 U. S. 1; *Leek Min. Co. v. Longford,* 33 Sou. Rep. 492; *Crouch v. Gottman,* 30 Am St. Rep. 323; *Schimidt v. Life ass.,* 84 Am. St. Rep. 323; *Burt v. Union Central Ins. Co.,* 187 U. S. 181; *Wyandotte etc. Ry. Co. v. Bridge Co.,* 40 C. C. A. 325; *King etc. Mfg. Co. v. St. Louis,* 10 L. R. A. 826; *Blymer Ice Machine Co. v. McDonald,* 19 Sou. Rep. 459; *Davis v. Light Co.,* 47 Am. St. Rep. 622; *Cort v. Ambergate etc. R. Co.,* 1 L. & W. Cas. Contr. 937; *Laid v. Pim,* 1 Langd. & W. Cas. Contr. 927; 4 Exch. 335; *Jones v. Barkley,* 1 Langd. & W. Cas. Contr. 901.

Where one party prevents the performance by the other party of the contract, the profits which would have accrued upon the performance of said contract by such party, is the measure of damages for such breach.— *Peck-Hammond Co. v. Heifner,* 136 Ala. 473; *Stanton v. N. Y. & E. R. Co.,* 21 Am. St. Rep. 110; *U. S. v. Behan,* 110 U. S. v. 338; 10 Rose's Notes, U. S. S-C Rep. 728, et seq.; *Robinson v. Bullock,* 66 Ala. 548; *Danforth v. T. C. R. R. C.,* 93 Ala. 620; S. C. 99 Ala. 331; 112 Ala. 80; *Cook v. Cook,* 110 Ala. 567; *Roehm v. Horst,* 178 U. S. 1; Rose's Notes U. S. S-C Rep. 1123-4; *Bonifay v. Hassell,* 100 Ala. 269; *Mason v. Ala. Iron Co.,* 73 Ala. 270; *Baxley v. T. & M. Ry. Co.,* 128 Ala. 183; *Worthington v. Giving,* 119 Ala. 44; *Griffin v. Ogletree,* 114 Ala. 343; *Watson v. Kirby,* 112 Ala. 436; *Bell v. Reynolds,* 78 Ala. 511; 13 Cyc. 53-4; *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 N. Y. 211; *Dunn v. Johnson,* 5 Am. Rep. 177; *Philadelphia etc., R. Co. v. Howard,* (3 How U. S. 344, 14 L. Ed. 15); *Gardner v. Deeds, et al,* 4 L. R. A. (N. S.) 740 and note; *Hickley v. Pittsburg etc., Steel Co.,* 121 U. S. 264; *Masterton v. Brooklyn,* 7 Hill 69, 42 Am. Dec. 38 and note; 2 Keener's Sel. Cas. Contr. 1089, et seq. 1096.

If a party has notice, at the time of entering into a contract, that the other party thereto had in contemplation a contract for the sale of the article to be manufactured, and before default in performing his part of the contract such party had notice that the contract contemplated had been made, if such party breaches his contract, he is liable for the profits which the other party would have made.—*Baxley v. T. & M. Ry. Co.,* 128 Ala. 183; and authorities cited therein; *Fell v. Newberry,* (Mich.) 64 N. W. Rep. 474; *Leonard v. Beaudry,* (Mich.) 36 N. W. Rep. 88; *Liman v. Pa. Ry. Co.,* 24 N. Y. Suppl. 824; *Hadley v. Baxendale,* 5 L. R. C. 502;

[Dickerson v. Finley.]

*Young v. Cureton,* 87 Ala. 727; *Robinson v. Bullock,* 66
Ala. 548; *Anvil Mining Co. v. Humble,* 153 U. S. 548;
*A. J. Anderson E. Co. v. Cleeburne W. I. & L. Co.,* 44
S. W. Rep. 929; *Daughtery v. Am. Union Tel. Co.,* 75
Ala. 168;; *Penn & Co. v. Smith, Grainger & Cantrill,*
104 Ala. 445; *Bell v. Reynolds,* 78 Ala. 611; *Buer v. Red-
head,* 72 N. W. Rep. 1058; *Central Trust Co. v. Clark,* 34
C. C. A. 354; *Boutin v. Rudd,* 27 C. C. A. 526; *Carpenter
v. First Nat. Bank,* 119 Ill. 352; *Cuelzton Bros. Co. v. A.
H. Andrews & Co.,* 92 Wis. 214; *Swain v. Schiffelin,* 134
N. Y. 471; *Mason v. Ala. Iron Co.,* 73 Ala. 270. Expenses
are recoverable when profits cannot be proven.—*Worth-
ington v. Gwin,* 119 Ala. 44; *Danforth v. T. & C. Ry.
Co.,* 93 Ala. 614.

W. T. SANDERS, for appellee. The court properly
sustained demurres to counts 3 and 4.—*Adley v. Baxen-
dale,* 5 and 6 Eng. Ruling Cases, 525; *Horn v. Mid. Ry.
Co.,* 5 and 6 Eng. Ruling Cases, 502; *Reid Lbr. Co. v.
Lewis,* 94 Ala. 627; *Raisin Fert. Co. v. Barrow,* 97 Ala.
694; *Moulthrop, et al. v. Hyatt, et al.,* 105 Ala. 493;
*Watson v. Kirby,* 112 Ala. 436; *Nichols v. Rasch,* 138
Ala. 375; *Ala. Chem. Co. v. Guese,* 143 Ala. 591; *South-
ern Ry. Co. v. Coleman,* 44 South. 837. Contingent prof-
its from possible sales, etc., cannot enter into the re-
covery of damages.—*Hervey v. Conn. R. R. Co.,* 104
Mass .421; *Ward & Co. v. Elkins,* 34 Mich. 439; *Ward
v. N. Y. Cent.,* 47 N. Y. 29; *Brock v. Gale,* 14 Fla. 523;
*Matthews v. Express Co.,* 138 Mass. 55. Special dama-
ges should be alleged with particularity, 13 Cyc. 179.
Damages on account of express, and on account of loss
of time must be specially pleaded.—5 Ency P. & P. 735-
758; 13 Cyc. 176. On the authorities cited, it is contend-
ed that the contract is within the statute of frauds.—
*Brigham v. Carlisle,* 76 Ala. 243; *Heflin v. Milton,* 69
Ala. 354.

SIMPSON, J.—This is a suit by the appellant against the appellee for breach of a contract by which the defendant agreed to furnish a sawmill, all of his standing timber, and the use of certain teams, wagons, etc., in consideration that plaintiff would cut the timber, furnish drivers, labor, etc., and manufacture the lumber in a workmanlike manner—said lumber to be the property of plaintiff and defendant in equal shares, and the plaintiff to purchase defendant's part thereof at $9 per 1,000 feet. The plaintiff claims that, relying upon the provisions of said contract, he had made certain contracts for the sale of the lumber at certain prices, and that by the breach of the contract by the defendant the plaintiff has been deprived of the profits which he would otherwise have made on said contracts..

The first point of contention is as to the measure of damages in this case. While this subject has been prolific of a great deal of litigation, and volumes have been written upon it, in various jurisdictions, ever since the decision in the leading case of *Hadley v. Baxendale*, 9 Exch. 341, our own court has had much to say on the subject, and we think its decisions clearly mark out the rules governing such cases, and that they are in accordance with the leading case and with the great weight of authority. In this, as in other matters, the great aim of the law, in interpreting contracts, is to put one's self in the position of the contracting parties and ascertain what was their intention—what rights the one party intended to secure, and what the other intended to confer or to guarantee. Hence the rule in the *Hadley-Baxendale Case*, that the plaintiff in entitled to "(1) such damages as may fairly and substantially be considered as arising naturally—i. e., according to the usual course of things—from the breach of the contract itself, or (2)

such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach."

While our court has followed the *Hadley-Baxendale Case*, yet the writer of one of our decisions criticises the wording of it, because he thinks that, as men are not supposed to contemplate breaking their contracts, it is not correct to speak of the damages which are within their contemplation when the contract is made. The very object of making contracts and reducing them to writing is to bind the parties to their performance and to provide against their breach; and when parties make them, however honest they may be, they necessarily project their minds forward, and each party considers, "What rights am I securing, and against what loss am I agreeing to hold the other party harmless?" and this necessarily carries with it the question, "What are my liabilities if, for any cause, I fail to carry out my part?" It is no impeachment of a man's integrity to think of the possible damages, but is only business judgment to do so.

However, the meaning of the expression is merely, "What were the matters intended to be provided for and against when the contract was made?" Hence, as every person is presumed to intend the natural and usual consequences of his act, the rule is reasonable that he should be liable for "such damages as may fairly and substantially be considered as arising naturally—i. e., according to the usual course of things—from the breach of the contract;" and, as all contracts are made in the light of surrounding circumstances, if the contract is made for a specific purpose, which is known to both parties, or, as expressed by our own court, if "there be special circumstances, which impart to the subject or services a value and importance their appearance does not indicate

11—8

this is outside of the usual course of things, and falls within Baron Alderson's second rule, which requires that the party sought to be charged shall have had notice of such special circumstances when he entered into the contract."—*Daughtery v. Am. Tel. Co.*, 75 Ala. 168, 176, 51 Am. Rep. 435.

In the case cited a seeming exception is ingrafted upon the rule; but it is not really an exception, and is based upon the principle that the telegraph is a peculiar instrumentality resorted to only in particular emergencies, and public policy fixes upon such company the responsibility of expedition as to all messages, because the very fact of using it is notice to the company that expedition is required for some special reason, which it is not necessary to communicate to the company.

In the case of *Ramey v. Holcombe*, 21 Ala. 567, the contract was made for the specific purpose of enabling the party to run a stage line, but really no damages on account of profits lost were claimed; the only question being whether the plaintiff was entitled to recover the full amount which he was to have been paid for feeding the teams, or that amount reduced by what it would cost him, to provide the feed. The *Peck-Hammond Case*, 136 Ala. 473, 33 South. 807, 96 Am. St. Rep. 36, the case of *Bonifay v. Hassell*, 100 Ala. 269, 14 South. 46, and the case of *Fails & Mills v. McRee*, 36 Ala. 61, are upon the same principle, as is also the case of *Robinson v. Bullock*, 66 Ala. 548; and the cases are merely cited as a reason for excluding certain testimony in the case of *Mason v. Ala. Iron Co.*, 73 Ala. 270.

In the case of *Bell v. Reynolds & Lee*, 78 Ala. 511, 56 Am. Rep. 52, the contract was made for the sale of fertilizer, "with notice that it was intended for use on defendant's cotton crop" on a certain place. The fertilizer could not be purchased elsewhere, and the differ-

ence between that portion of the crop on which the fertilizer was used and that on which it was not was plainly visible and easily estimated. The rule above referred to is recognized, and the additional one, which is in accordance with the best-considered cases, and followed in the cases hereafter cited, that in any event profits which are remote and uncertain are never recoverable, and that "those profits are usually considered too remote, among others, which are not the immediate fruits of the principal contract, but are dependent on collateral engagements and enterprises, not brought to the notice of the contracting parties, and not, therefore, brought within their contemplation, or that of the law. Those are considered uncertain which are purely speculative in their nature and depend upon so many incalculable contingencies as to make it impracticable to determine them definitely by any trustworthy mode of computation."

The cases of *Danforth & Armstrong v. Tenn. & C. R. R.*, 93 Ala. 614, 11 South. 60, and 99 Ala. 331, 13 South. 51, and *Worthington v. Gwin*, 119 Ala. 44, 24 South. 739, 43 L. R. A. 382, do not contravene the general rule, but relate to profits to be realized out of the immediate business, the subject of the contract.

These salutary rules are followed in a long line of decisions by our own court, and are in accordance with the views of our best text-writers.—*Western U. Tel. Co. v. Way*, 83 Ala. 542, 557, 4 South. 844; *Young & Co. v. Cureton*, 87 Ala. 727, 6 South. 352; *Swift & Co. v. Eastern Werehouse Co.*, 86 Ala. 294, 5 South. 505; *Am Union Tel. Co. v. Daughtery*, 89 Ala. 191, 7 South. 660; *Burton v. Henry*, 90 Ala. 282, 7 South. 925; *Reed Lumber Co. v. Lewis*, 94 Ala. 626, 627, 628, 10 South. 333; *Moulthrop & Stevens v. Hyett & Smith*, 105 Ala. 493, 494, 17 South. 32, 53 Am. St. Rep. 139; *Raisin Fertilizer Co. v. Barrow*, 97 Ala. 694, 12 South. 388; *Watson v. Kirby & Sons*, 112

Ala. 439, 446, 20 South. 624; *Baxley v. Tallassee & Montgomery R. R.,* 128 Ala. 183, 190, 191, 29 South. 451; *Nichols v. Rasch,* 138 Ala. 372, 377, 35 South. 409; *Ala. Chemical Co. v. Geiss,* 143 Ala. 591, 39 South. 355; *So. Ry. Co. v. Coleman,* 152 Ala. 266, 44 South. 837, 838; *Byrne Mill Co. v. Robertson,* 149 Ala. 274, 285, 42 South. 1008.

In *Metzger v. Brincat,* 154 Ala. 297, 45 South. 633, "the contract shows that the matter in contemplation of the parties was that the business of the apellee should not be injured by renting a portion of the house to another party, and the evidence shows that the damages were ascertainable with reasonably certainty.—154 Ala. 297, 45 South. 634.

The case of *Nichols v. Rasch, supra,* which is vigorously assailed by the brief of appellant's counsel, is not contrary to the other decisions. The opinion states that, while "there are averments to show that the facts that plaintiff was under these contracts was known to the defendant," yet "whether he had such knowledge when he made the contract with plaintiff is not averred." 138 Ala. 376, 35 South. 411. It also states that the stopping of the mill, etc., was not stated as the basis of a claim for damages, and goes on to announce the recognized doctrine that such damages must not be merely speculative. 138 Ala. 377, 35 South. 411. See, also, Sutherland on Damages (3d Ed.) pp. 161-168, §§ 45, 52, Id. pp. 186, 187, § 59.

The allegations in the third and fourth counts of the amended complaint fall short of the requirements of the rule, in not alleging that the contracts which plaintiff claims to have made were made before or at the time of the making of the contract sued on, with full knowledge of the defendant, or that the same were within the contemplation of the parties in making the contract sued

[Dickerson v. Finley.]

on. They are also defective in not making specific averments as to said contracts, from which the court could judge whether the damages were sufficiently certain and easily ascertainable within the rule. Consequently there was no error in striking said portions of said counts.

As to the sustaining of the demurrer to said counts, while it is true that, when the objection is to a part of a count, the proper remedy is a motion to strike (*Bessemer Sav. Bank v. Rosebaum Groc. Co.*, 137 Ala. 530, 534, 34 South. 609; *McCleskey & Whitman v. Howell Cotton Co.*, 147 Ala. 574, 579, 42 South. 67.; *Byrne Mill Co. v. Robertson*, 149 Ala. 274, 286, 42 South. 1008), yet, as nothing else material was claimed in said counts, no injury could occur to the plaintiff by the sustaining of the demurrer.

No injury could accrue to the plaintiff by striking from the complaint the words, "He refused to furnish sufficient feed to keep the teams." Taken as a separate breach, it is too indefinite to raise a material issue, as it does not allege any injury to the plaintiff by reason of the failure. A man might not furnish sufficient feed for his own teams for their welfare, and still they might be able to do the work which he had contracted for them to do; and it would, at any rate, be but an argumentative inference that they were not. Viewed in connection with the entire count, the gravamen of the count is that he refused to allow the teams to be used at all, and, if so, it was immaterial to the plaintiff whether the defendant did or did not furnish his own teams with a sufficiency of food.

The court erred in sustaining the demurrer to counts 5 and 6 of the amended complaint. The damages therein claimed are legitimate, and it was not necessary to itemized each matter of express. This was matter of evidence, which would come up in the trial.—*Danforth &*

*Armstrong v. T. & C. R. R. Co.*, 93 Ala. 614, 11 South. 60; *Worthington v. Gwin*, 119 Ala. 44, 24 South. 739, 43 L. R. A. 382; *Watson v. Kirby & Sons*, 112 Ala. 436, 20 South. 624; *U. S. v. Behan*, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 169.

If plaintiff could have minimized the damages, by employing his hands and himself, after ascertaining that defendant was not going to comply with his contract, that was matter in rebuttal, which might have been brought out in evidence.

The judgment of nonsuit is set aside, and the cause remanded.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.


